**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| SIMPLEAIR, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>AWS CONVERGENCE TECHNOLOGIES, INC. ET. AL<br><br>     Defendants. | Civil Action No. 2:09-cv-289 (TJW) |

**PLAINTIFF SIMPLEAIR'S OPPOSITION TO DEFENDANTS' MOTION TO
TRANSFER VENUE**

**Table of Contents**

I. Introduction ...................................................................................................................... 1

II. Factual background .......................................................................................................... 2

    A. The SimpleAir patents .......................................................................................... 2

    B. Defendants and their accused products ................................................................ 3

    C. SimpleAir's prior lawsuits .................................................................................... 3

    D. SimpleAir's relocation to Texas .......................................................................... 4

III. The private interest factors weigh strongly against transfer ............................................. 5

    A. Factor 1: the "relative ease of access to sources of proof" ................................. 5

        1. The law ...................................................................................................... 5

        2. There is substantial evidence located in and closer to
this District ................................................................................................ 6

        3. Defendants' arguments for Northern California fail ................................ 7

    B. Factor 2: the "availability of compulsory process" ............................................

        1. The law ...................................................................................................... 8

        2. This factor weighs against transfer ........................................................... 8

            a. Defendants' Northern California witnesses ............................................ 9

            b. The Eastern District has subpoena power as well ................................ 10

    C. Factor 3: "the cost of attendance for willing witnesses" ................................... 11

        1. The law .................................................................................................... 11

        2. The Eastern District is more convenient to the parties and
the majority of potential witnesses ......................................................... 12

        3. Defendants' arguments for Northern California fail .............................. 12

    D. Factor 4: "all other practical problems that make trial of a case easy
expeditious and inexpensive" ............................................................................. 13

IV. The public interest factors also weigh against transfer .................................................. 14

    A. Factor 1: "administrative difficulties flowing from court congestion" ............. 14

    B. Factor 2: "the local interest in having localized interests
decided at home" ................................................................................................ 14

        1. The local interest in Eastern Texas ......................................................... 14

        2. The Northern District of California has far less of a
local interest ............................................................................................ 15

    C.    Factors 3 and 4: "familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws"...........................................................................................15

V.    Conclusion ...........................................................................................................15

**Cases**

*Aloft Media, Inc. v. Yahoo!, Inc.*,
   2009 U.S. Dist. LEXIS 48716 (E.D. Tex. 2009) .............................................................. 8, 10-12
*Aten Int'l Co., Ltd. v. Emine Technology Co., Ltd.*,
   261 F.R.D. 112 (E.D. Tex. 2009) ......................................................................................11
*Convolve, Inc. v. Dell, Inc. et al.*,
   2:08-cv-244-CE (E.D. Tex. 2009) ...................................................................................5, 11
*Emanuel v. SPX Corp.*,
   6:09-cv-220-JDL (E.D. Tex. 2009) ................................................................................... 1, 5
*In re Genentech, Inc.*,
   556 F.3d 1338, 1342 (Fed. Cir. 2009) ..............................................................................11, 12
*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333, 1338 (Fed. Cir. 2009) ................................................................................... 1
*MediaIdea, LLC v. Zimmer Holding, Inc.,et al.*,
   2:09-cv-258 TJW (E.D. Tex. 2010) ................................................................................ 8, 11-12
*Mediostream, Inc. v. Microsoft Corp.*,
   2009 U.S. Dist. LEXIS 90952 (E.D. Tex. 2009) ...................................................................... 8
*Motiva LLC v. Nintendo Co.*,
   2009 U.S. Dist. LEXIS 55406 (E.D. Tex. 2009) ................................................................... 1, 6
*Novartis Vaccines and Diagnostics, Inc. v. Bayer Healthcare et al.*,
   2:08-cv-68-TJW at 6-7 (E.D.Tex. 2009) ................................................................................ 5
*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) .......................................................................................... *12*
*In re Volkswagen of Am., Inc.*
   545 F.3d 304, 315 (5th Cir. 2008) ............................................................................. 1, 5, 6, 14

**I.     Introduction.**

The party "who seeks the transfer must show good cause" and to do so must "demonstrate[] that the transferee venue is *clearly more convenient*." *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (emphasis added).  Several factors control the transfer analysis but they largely amount to one central inquiry:  "whether or not the underlying dispute is focused on some localized region away from the Eastern District of Texas." *Emanuel v. SPX*, 6:09-cv-220-JDL, 6 (E.D. Tex. 2009) (internal citation omitted).  As a corollary, courts consider whether there is an absence of any logical connection to the Plaintiff's chosen venue.  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) (transfer appropriate where "it is undisputed that this case has no relevant factual connection to the Eastern District of Texas").  This case passes both tests and all of the Fifth Circuit factors.

*First*, there is no other venue that the claims and defenses in this action are centered around or that is otherwise clearly more convenient than the Eastern District of Texas.  Two of the twelve parties[1] (Facebook and Apple) are based in Northern California.  Certainly their home court would be more convenient for them.  But in a multi-defendant case -- with witnesses and evidence found in this district, in nearby parts of Texas, and spread across the rest of the country -- these two defendants cannot steer the litigation away from SimpleAir's home venue to their own.  *Motiva LLC v. Nintendo Co.*, 2009 U.S. Dist. LEXIS 55406, at 1 (E.D. Tex. 2009) ("In light of the evidence that the relevant witnesses and documents are spread across the country, the simple fact that one of the Defendants operates primarily in the transferee venue cannot, standing alone, show clear convenience").  Moreover, while Northern California may be more convenient for Defendant Disney Online (Los Angeles), the Eastern District of Texas is substantially more convenient for all remaining parties and the majority of identified material witnesses.  Declaration of Jeff Eichmann ¶¶ 25-29.

---

[1] There were thirteen parties in the case up until April 16, 2010.  During the pendency of this motion SimpleAir and Defendant Handango (of Irving, Texas) agreed to dismiss their claims and counterclaims against each other without prejudice and the Court permitted.  Dkt. # 101.

*Second*, there is a substantial connection between this case and this District. SimpleAir has been asserting the patents in this District since 2006. Last year it relocated to Plano, Texas to facilitate its enforcement efforts in the district as well as its continued patent prosecution efforts, handled by its patent attorney in Dallas. Declaration of John Payne ¶¶9-15. This district also has special significance to the patents. Their initial commercial embodiment, in a service called AirMedia Live!, was operated from two locations: (1) AirMedia headquarters in New York City and (2) Plano, Texas, where the wireless carrier for the service, PageNet, was located. *Id.* ¶3. In addition, this district, as well as nearby areas of Texas and Louisiana, is home to substantial sources of evidence and material witnesses relevant to SimpleAir's claims against all of the Defendants, as well as issues of non-obviousness and damages. Eichmann decl. ¶¶6-15.

Defendants argue that SimpleAir seeks to "manipulate venue" by relocating to Texas. Their allegations are not just false but disingenuous. It is Defendants who seek to manipulate venue, falsely framing this case as one centered in Northern California and willfully ignoring the location of witnesses and evidence in and closer to this District. Their motion must be denied.

## II. Factual background.

### A. The SimpleAir patents.

SimpleAir, Inc. owns four patents relating to wireless messaging, content delivery, and notification services: the '433 and '914 patents (both titled "System and Method for Transmission of Data") and the '426 and '614 patents (both titled "Contact Alerts for Unconnected Users"). Generally speaking, the patents claim methods of processing and transmitting information of interest (*e.g.*, news, weather, sports scores, personal messages) to users of mobile devices in a scheduled and/or real time environment and notifying the users of the receipt of the information whether they are online or offline. This is referred to as "push" technology, and it has been incorporated in numerous commercial products and services in recent years. SimpleAir's patents, however, claim priority to 1996 and the widely acclaimed AirMedia Live! Internet Broadcast service of the original patentee. Payne decl. ¶¶2-6.

### B. Defendants and their accused products.

Each of Defendants is accused of infringing two or more of the asserted SimpleAir patents based on their sale and operation of services relating to mobile applications (*e.g.,* Blackberry and iPhone applications) and mobile alerts products (*e.g.*, text message alerts). The accused products and services provide real-time and scheduled notifications to mobile devices (cell phone, iPhones, Blackberries, etc.) regarding information or events of interest to the device user (*e.g.*, sports scores, weather alerts, breaking news, stock quotes, and social networking messages or gaming activities) even when they are offline from the source of the information. For example, a user of "The WeatherChannel Max" application for the iPhone will receive "push" notifications alerting the user to severe weather in his area of interest, even when the user is not using the application to access WeatherChannel content. Although each Defendant is a standalone infringer, there is substantial overlap between their infringing products and services.[2]

### C. SimpleAir's prior lawsuits.

SimpleAir is owned and managed by lead inventor John Payne and his co-inventor Tim Von Kaenel. The company (then named SimpleAir Holdings, Inc.) re-acquired the patents in 2004 when what was left of the AirMedia business went into bankruptcy and began asserting the patents against infringers in 2006. A first action was brought against AccuWeather, Inc in the Central District of California. *SimpleAir Holdings Inc. v. AccuWeather Inc.*, 2:06-cv-00799-GHK-FMO . Eichmann decl. ¶2. The case was quickly settled and dismissed before any responsive pleading was filed or other activity occurred. *Id.* On October 26, 2006, SimpleAir brought suit against several defendants in the Eastern District of Texas for offering mobile applications and text message alert products that infringed SimpleAir's '426 and '614 patents. *SimpleAir Holdings, Inc. v. m-Qube, Inc. et al*, 2:06-CV-449 (CE) (the "m-Qube action"). *Id.* ¶3. On July 28, 2008, SimpleAir brought another suit in this District, alleging infringement of SimpleAir's '914 patent based on similar products and services. *SimpleAir Holdings, Inc. v.*

---

[2] For example, Defendants Facebook, Handmark, ABC,  ESPN, AWS, and Weather Channel operate and provide infringing applications and services for users of Apple and Research in Motion's accused  iPhone, iPad, and Blackberry devices.

- 3 -

*clearTXT, Inc. et al.*, 2:08-cv-290 (TJW) (the "clearTXT action"). *Id.* ¶4. In the m-Qube action, the parties litigated up until just before the *Markman* hearing. *Id.* ¶3. In the ClearTXT matter, there was no motion practice or discovery. *Id.* ¶4. Settlements were reached with the defendants in both actions and by January 21, 2009 the last defendant between the two cases was dismissed. *Id.*¶5. No party challenged venue. *Id.*¶¶3-4.

### D.    SimpleAir's relocation to Texas.

Having filed two prior lawsuits in this district and litigated the mQube case in this District, and having already retained and worked with local counsel in the district as well as a technical expert located in Austin, Texas, SimpleAir planned to continue its future enforcement actions in the Eastern District of Texas. Payne decl. ¶¶9-16. To facilitate access to this Court, SimpleAir began in 2009 to search for office space in the district and to consider whether to reincorporate in Texas. *Id.* SimpleAir decided on an office in Plano. Plano is close to Dallas, where SimpleAir's longtime patent attorney is located and DFW airport, and also has cheaper rent than Dallas. *Id.* ¶12. SimpleAir also decided to reincorporate in Texas, which has more advantageous tax laws than California. *Id.*¶15. Contrary to Defendants' assertions, SimpleAir did not simply obtain a mailing address in Plano. It has an actual office (not a "virtual" one) in a building that provides offices and shared conference facilities to many small companies. *Id.* ¶13-15. Although President & CEO John Payne maintains his residence in Southern California, he conducts business relating to SimpleAir in the Plano office, including meetings with patent counsel, and other work with SimpleAir's experts and litigation counsel. *Id.* In addition, the office houses originals of SimpleAir's documents relating to the conception, reduction to practice, and commercialization of the patents (including physical units of the commercial product sold by AirMedia, the original patentee), and other documents relating to Defendants infringements and damages. *Id.* SimpleAir did not move to Texas to "manipulate" or manufacture venue for litigation. It moved here because this is where its litigation had been occurring and was expected to continue and because numerous other convenience and economic factors justified the move.

**III.     The private interest factors weigh strongly against transfer.**

"The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Volkswagen II,* 371 F.3d at 203.  Each of these factors weighs against a transfer to Northern California.[3]

    **A.     Factor 1:  the "relative ease of access to sources of proof"**

        **1.     The law.**

Under this factor, we consider the location of the relevant evidence relative to the current venue and the proposed venue.  Where the relevant evidence is located entirely or primarily in the transferee venue, this factor supports transfer.  *Volkswagen II*, 545 F.3d at 316 (transfer granted where <u>all</u> documents relating to accident and all physical evidence in transferee forum).  Conversely, when that is not the case, a transfer is less likely to be appropriate.  *Emanuel*, at 8 (E.D. Tex 2009) ("In TS Tech and Volkswagen II, all of the relevant physical evidence was located in or near the transferee forum.  Unlike Volkswagen II and TS Tech, however, all of the documents in this case are not located in or near the transferee forum" (internal citations omitted)).  Furthermore, provided there is evidence in the transferor district itself, the central location of that district to various sources of evidence scattered throughout the country weighs against transfer to a less central venue.  *Convolve, Inc. v. Dell, Inc. et al.*, 2:08-cv-244-CE (E.D. Tex. 2009) at 2 ("the physical evidence in this case is widely scattered, and most of the defendants' proof is closer to the Eastern District of Texas. . . Accordingly, this factor weighs against transfer").  Finally, although electronic technologies do not render this factor meaningless, the Court can nonetheless consider whether there is any particular difficulty in transporting documents to the transferor venue.  *Novartis Vaccines and Diagnostics, Inc. v.*

---

[3] Plaintiff notes that in some of the cases a factor is described as coming out "neutral" when both venues "tie" under the analysis (e.g., where they both house an equal number of witnesses).  Plaintiff believes this characterization is not accurate.  Because the burden is on the movant to show that the transferee forum is clearly more convenient, a tie goes to the transferor forum.  It doesn't render the factor's outcome neutral, it weighs against a transfer.

*Bayer Healthcare et al.*, 2:08-cv-68-TJW at 6-7 (E.D.Tex. 2009) ("Defendants have not identified any documents or evidence located in the Northern District of California that cannot be produced electronically, and have not otherwise shown that transporting documents and physical evidence to Marshall would pose significant additional inconvenience.  Therefore, the Court finds that this factor weighs against transfer").

### 2. There is substantial evidence located in and closer to this District.

Defendants argue: "virtually no sources of proof relating to SimpleAir's claims are located in the Eastern District of Texas, whereas the Northern District of California is a center of gravity for evidence in this action."  Defs. at 11.  This argument fails for three reasons.

<u>*First*</u>, the Court must consider the location of all relevant evidence – not just the evidence "relating to SimpleAir's claims" for infringement.  *Motiva,* at 4-5 (E.D. Tex. 2009) ("this factor will turn upon which party will most probably have the greater volume of documents relevant <u>to the litigation</u>" (emphasis added)).  Defendants' failure to identify a single source of evidence under this factor other than their own documents is contrary to law and ignores, among other relevant issues, their pleaded assertions of invalidity, unenforceability, laches, and various of affirmative defenses and counterclaims.  *Id.*  ("Defendants [argue] they clearly have the greater volume of documents relevant to this suit . . . However, at this early stage of the litigation it is unclear which issues will be the most relevant or which documents will be necessary for trial.  This is especially true because Defendants have pleaded defenses such as laches, waiver, estoppel, unclean hands, and invalidity").

<u>*Second*</u>, Defendants' argument that Northern California is "a" center of gravity invokes a non-existent standard.  Where the relevant evidence is located entirely or primarily in the transferee venue, courts are more inclined to grant transfer.  *Volkswagen II*, 545 F.3d at 316.  But this does not allow a Defendant to simply pick one of several other districts where evidence is located (each its own "center" of *some* evidence) and transfer the case to that district.  Nor does it allow Defendants to pick the home court for two of them (out of 11 defendants) and declare it the most accessible venue.  *Motiva,* at 11 ("In light of the evidence that the relevant witnesses

and documents are spread across the country, the simple fact that one of the Defendants operates primarily in the transferee venue cannot, standing alone, show clear convenience").

*Third*, there are substantial sources of proof relating to all issues in this case located in Texas and specifically in this District. Eichmann decl. ¶¶7-15. This includes (1) original documents and product units relating to the development and initial commercialization of the SimpleAir patents, (2) evidence held by Defendants Research in Motion, Apple, and Handmark relating to their own infringing products and sales as well as those of each of their co-defendants, and (3) evidence from relevant third parties who provide services, mobile devices, and hardware used by Defendants to infringe, such as AT&T, Texas Instruments, Nokia, Motorola, Ericsson, and former defendant Handango. *Id.*

*Fourth*, the Eastern District is more conveniently located to the majority of the evidence in this case from the parties and third parties than the Northern District of California (or any other district for that matter). Eichmann decl. ¶¶6-24.

### 3. Defendants' arguments for Northern California fail.

Defendants make several unsuccessful arguments under this factor.

First, they assert: "Apple and Facebook both developed their accused products in California, and therefore virtually all their relevant sources of proof are located there." Defs. at 11. The *development* of these defendants' products is not the only evidence relevant to SimpleAir's claims against them. Furthermore Apple and Facebook's declarations do not establish that all infringement evidence is in Northern California. Moreover, there is substantial evidence relating to all defendants in and near this District. Eichmann decl. ¶7-15.

Second, Defendants argue that Research in Motion Corp. (RIM) has a facility in Redwood, California. RIM, however, does not join in Defendants' motion nor does it submit a declaration to show that its accused services were either developed or operated from this facility. Moreover, RIM cannot dispute that its relevant evidence is located primarily, if not entirely, in Irving, Texas and Waterloo, Ontario Canada, both of which are closer to this district.

Third, Defendants argue "plaintiff maintains its sources of proof in the neighboring

Central District of California; and no party maintains sources of proof relating to any of SimpleAir's claims in the Eastern District of Texas." Defs at 12. Defendants argue that SimpleAir is "attempt[ing] to manipulate venue" with its "Texas incorporation under a 'virtual' business address." Defs at 11-12. As explained above, SimpleAir maintains its sources of proof in Plano, Texas – not the Central District of California. Furthermore, Defendants' "virtual business" argument is demonstrably untrue. As explained above, SimpleAir has legitimate business reasons for its relocation to Texas and there is nothing untoward in its conduct. *MediaIdea v. Zimmer*, 2:09-cv-258 (TJW) (E.D. Tex. 2010) at 4 ("The Court is not persuaded that a corporation's decision where to locate its offices is the type of "prohibited activity" that the Federal Circuit had in mind . . . Moving a business to a particular location is not the type of activity that, on its face, serves no purpose but to manipulate venue").

Fourth, Defendants argue "what little proof is located in Texas is greatly overshadowed by proof housed in the Northern District of California." Defs. at 11. This is only because Defendants have made no effort to identify or describe *any* evidence located in Texas. They fail to identify any of the evidence in the Eastern District described by Plaintiff above and make no effort to explain why the evidence of Defendants Research in Motion and Handmark – which relates to not just those but all Defendants – is outweighed by Apple and Facebook's evidence.

### B.    Factor 2: the "availability of compulsory process"

#### 1.    The law.

"This factor is concerned with the court's ability to compel non-party witnesses to attend trial." *Mediostream, Inc. v. Microsoft Corp.*, 2009 U.S. Dist. LEXIS 90952, 6 (E.D. Tex 2009). "This factor weighs most strongly in favor of a transfer of venue when the proposed transferee forum has absolute subpoena power over all of the third-party witnesses." *Id.* The comparison of venues' subpoena power includes consideration of whether there is any evidence that the identified third parties would need to be subpoenaed in the first place (*i.e.*, evidence they are unwilling to come to trial) as well as the suitability of videotaped deposition testimony to present any evidence from the witness at trial. *Aloft Media, Inc. v. Yahoo!, Inc.*, 2009 U.S. Dist. LEXIS

48716, at * 22 (E.D. Tex. 2009) ("[N]either side has indicated that it would have difficulty compelling the attendance of any witness. Even if this Court could not compel a witness's attendance, neither party is prevented from using the witness's videotaped deposition at trial").

### 2. This factor weighs against transfer.

Defendants' arguments under this factor must be rejected. The factor is neutral.

#### a. Defendants' Northern California witnesses

Defendants argue "the Northern District of California would likely have absolute subpoena power over a number of non-party witnesses." Defs. at 12. Their motion identifies a total of thirty four non-party witnesses (other than the three SimpleAir co-inventors not involved with SimpleAir): three prior art witnesses that "will almost certainly be called by the Defendants in this case to testify," the company Intel, former Apple employee Robert Borchers, and 29 additional prior art inventors and assignees "with knowledge of the prior art that may also be called." *Id.* at 5, 12. Every single one of the non-party witnesses or companies is located in the Northern District of California.[4] This is not because the only third parties with information relevant to this case just happen to live in Northern California. This is because Defendants have cherry-picked, from a wide range of third party witnesses with locations in Texas and all other parts of the country (many of whom are specifically known to Defendants),[5] only those witnesses that reside in their preferred forum. Defendants' arguments for their forum must be rejected.

*First*, the Northern District of California does not have "absolute subpoena power." As explained above, this factor under *Volkswagen* is more important when one of the forums has absolute subpoena power. That means the ability to compel attendance at trial of <u>all</u> material

---

[4] Defendants list three companies that do not appear to be in existence any longer. In addition, they appear to list outdate addresses for three witnesses who no longer reside in the Northern District of California or within its subpoena power. Eichmann decl. ¶ 31.

[5] As explained below, with respect to Factor 3, the potential material and relevant witnesses in this case number in the hundreds and are located all over the country, including in this District. In addition, a great majority of these witnesses can be identified by the prior art that is cited on the face of the SimpleAir patents and the invalidity contentions served in SimpleAir v. m-Qube case that was litigated in this district, which Defendants have (presumably because two of the defense firms in this lawsuit represented all defendants in the m-Qube case).

third party witnesses. It does not make sense to talk of the Northern District of California "hav[ing] absolute subpoena power *over a number of non-party witnesses*." Defs' at 12 (emphasis added). Moreover, there are hundreds of material witnesses located outside of the subpoena power of the Northern District of California. Eichmann decl. ¶34-35.

*Second*, Defendants fail to present any evidence or argument that any of the witnesses they identify will be unwilling to come to trial and must be subpoenaed. Nor do they explain why video depositions from these witnesses would not be sufficient to communicate their testimony to the jury. *Aloft Media,* 2009 U.S. Dist. LEXIS 48716, at *22 ("In this case, neither side has indicated that it would have difficulty compelling the attendance of any witness. Even if this Court could not compel a witness's attendance, neither party is prevented from using the witness's videotaped deposition at trial"). One of the witnesses is a former employee of Apple and presumably would come to trial willingly if called. All others identified are prior art witnesses. If their testimony is sought to authenticate prior art, video testimony would seem sufficient.[6] And to the extent more extensive testimony is sought, Defendants have failed to make any showing that such testimony would be especially important for the jury to see live.

Accordingly, the Northern District of California does not have absolute subpoena power and Defendants have failed to show an actual need for exercising its subpoena power.

### b.     The Eastern District has subpoena power as well

Defendants argue: "the Eastern District of Texas will not be able to compel the attendance, either at trial or at deposition, of a *single* relevant non-party witness." Defs. at 12. This is false. There are at least 20 material witnesses with information relevant to Defendants' infringement, damages, and issues of validity that reside within the District or this Court's subpoena power if their attendance must be compelled. Eichmann decl. ¶36.

\* \* \*

---

[6] Because patents and most publications are self-authenticating, it is unclear whether testimony from Defendants' prior art witnesses would be needed at all. Indeed, of the prior art witnesses identified by Defendants only Mssrs. McAfee, Will, and Kikinis are identified as likely trial witnesses by Defendants and these witnesses are claimed to be material because of U.S. patents that name them as inventors. Defs at 5.

Defendants' effort to overstate the subpoena power of the transferee venue must be rejected. They have failed to show that Northern California's subpoena power renders it a clearly more convenient forum than this District. This factor therefore weighs against transfer.

**C.    Factor 3: "the cost of attendance for willing witnesses"**

**1.    The law.**

Under this factor, "the court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the [transferee venue]." *Convolve* at 5. "[A]ll potential material and relevant witnesses must be taken into account for the transfer analysis, irrespective of their centrality to the issues raised in a case." *Aten Int'l Co., Ltd. v. Emine Technology Co.*, *Ltd.*, 261 F.R.D. 112, 119 (E.D. Tex. 2009). Further, the convenience to plaintiff's witnesses is of no less important than the convenience to defendants' witnesses. *Aloft Media*, 2009 U.S. Dist. LEXIS 48716, at 22 ("Because the Northern District of California would be more convenient for Defendants and their witnesses, and the Eastern District of Texas would be more convenient for Aloft and its witnesses, this factor is neutral with regard to the parties and their witnesses").

Under the Fifth Circuit's "100 mile rule" – which is applied where, as here, the current and proposed venues are more than 100 miles apart – a court determines the respective distances between the residences (or workplaces) of all the identified material and relevant witnesses and the transferor and transferee venues." *Aten Int'l Co.,* 261 F.R.D. at 121. The rule's application "favors transfer (with differing degrees) if the transferee venue is a shorter average distance away from witnesses than the transferor venue." *Id*. The courts have warned that this rule should not be rigidly applied, particularly where witnesses are located great distances from either venue. *Id.* However, that caution is typically applied where potential witnesses are located in Europe or Asia – not where the witnesses are simply located throughout the United States. *In re Genentech, Inc.*, 556 F.3d 1338, 1342 (Fed. Cir. 2009); *Aten Int'l Co.,* 261 F.R.D. at 119 ("In this case, travel from Taiwan to either California or Texas is clearly a significant distance"); *MediaIdea*, at 3 ("When applying the 100-mile rule, a court should not place too much weight to the relative inconvenience for overseas parties and witnesses"). In fact, except where there is no

logical connection to the current venue, the court may consider its centrality to witnesses scattered across the country. *Aloft Media,* 2009 U.S. Dist. LEXIS 48716, at *22 ("This is not a case where the parties and witnesses are localized in one general geographic area. Nor is this a case where no parties or witnesses are tied to the transferor venue. Rather, in this case, Aloft has filed suit in its home District, which is a more convenient location for the majority of non-party witnesses" (internal citations omitted)); *MediaIdea*, at 3 ("in cases where potential witnesses are from widely scattered locations, a trial court should not consider its "central location . . . in *the absence of witnesses within the plaintiff's choice of venue*" (emphasis added)).

        2.        **The Eastern District is more convenient to the parties and the majority of potential witnesses.**

The Northern District of California is clearly *less* convenient for the majority of the parties and the potential material witnesses in this case than the Eastern District of Texas. On average, the Eastern District is 231 miles closer to each of the parties than the Northern District of California. Eichmann decl. ¶28. In addition, while the Northern District of California may be more convenient for Defendants Facebook and Apple, who are based there, and Disney Online, who is in Los Angeles, the Eastern District of Texas is located closer to each of the remaining ten parties by an average of 846 miles. *Id.* In addition, there are at least 16 potential material witnesses in the Eastern District of Texas, 20 witnesses within the Court's subpoena power, and 61 witnesses in nearby parts of Texas. *Id.* ¶36. On average, among all potential material witnesses identified by the parties, the Eastern District is closer for the majority of them (62%) and is closer for the average witness by. *Id.*¶35.

        3.        **Defendants arguments for Northern California fail.**

Defendants make several uninformed and disingenuous arguments in support of their transfer effort. These arguments must be rejected. First, they chide SimpleAir for claiming "creating a fictional presence" in Texas. Defs. at 8. As explained above, there is nothing fictional about SimpleAir's presence in Plano. Second, they argue: "Disney Online is headquartered in Burbank and American Broadcasting Companies has offices and employees in Burbank, and therefore a significant number of their respective party witnesses will be located in

the Central District of California." Defs. at 8. Yet neither Disney nor ABC (despite submitting declarations) identify a *single* material witness of theirs located in the Central District much less the Northern District. Third, Defendants argue: "[1] no party or third-party witnesses are located in the Eastern District of Texas. [2] The closest witnesses – party witnesses for defendants RIM Corp. and Handango – are located in the Northern District of Texas. For these witnesses, the driving time to Marshall, Texas would be similar in duration to the flying time to the Northern District of California." Defs. at 12. The first part of this argument is false and to suggest that witnesses at RIM's Irving facilities (or from Handmark's Southlake offices) would be indifferent to driving 164 miles to Marshall or flying 1,500 miles to San Jose is frivolous. Fourth, Defendants then disregard the closer proximity of the Eastern District to Research in Motion Ltd. (Ontario, Canada), AWS (Germantown, Maryland), and the WeatherChannel (Atlanta) because "these parties will have to travel at least 600 miles no matter where they testify" and therefore the 100 mile rule is less significant. Defs. at 9. Absent from this analysis is any discussion of convenience for Handmark's witnesses in Kansas City, or of the ESPN and ABC witnesses from New York. Moreover, Defendants misapply the 100 mile rule. That rule is only to be discounted for witnesses that have to travel great distances, such as from Europe or Asia – not for witnesses coming from distances within the United States or nearby Canada.

**D.     Factor 4: "all other practical problems that make trial of a case easy, expeditious and inexpensive"**

Under this factor there are three considerations that weigh strongly against transfer. *First*, SimpleAir filed this lawsuit on September 23, 2009 and has been waiting its turn behind the other litigants in this district for a scheduling order. Defendants waited more than six months to file their motion to transfer, filing it the day after the Court noticed a scheduling hearing. Defendants have no excuse for this delay and would prejudice SimpleAir's ability to obtain an expeditious resolution of this matter if transfer were now granted and the last six months thrown away. *Second*, SimpleAir – reasonably expecting to continue enforcing its patents in this district – has invested both in local counsel, local experts, and a local office. Payne decl. ¶¶9-16. That cost is wasted if the case is transferred. *Third*, this Court has prior familiarity with SimpleAir

- 13 -

and the patents in suit from the prior lawsuits – more so, certainly, than the Central District of California, which Defendants point to as the home of SimpleAir's first litigation. Defs. at 3; *see also* Eichmann decl. ¶40.

Defendants have failed to argue, much less show that practical considerations make this case easier, cheaper, or more expeditious to try in Northern California and there are various practical reasons why this case is better tried here. This factor therefore weighs against transfer.

## IV. The public interest factors also weigh against transfer.

The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law.'" *Volkswagen II,* 371 F.3d at 203. These factors also weighs against transfer.

### A. Factor 1: "administrative difficulties flowing from court congestion"

The Northern District of California is substantially slower in getting cases to trial than the Eastern District of Texas, particularly when it comes to patent cases. Eichmann decl. ¶37-38. In addition, the Northern District of California is ripe with cases that have languished on the dockets for exceptionally long periods of time. *Id*. That doesn't happen here. Moreover, if this case is transferred, SimpleAir will have to get in the back of the line behind the other litigants in that district and will likely end up with a trial date that is even later than the average. *Id.* ¶39.

### B. Factor 2: "the local interest in having localized interests decided at home"

#### 1. The local interest in Eastern Texas.

This District has a strong local interest in SimpleAir's case for three reasons. *First*, a local company, PageNet, played a critical role in the initial commercialization of the patent's technology. *Second*, the district has a greater local interest in this matter than any other district. SimpleAir has enforced its patents here in the past and has taken up residence in the district. The district has an interest in not just this case as a whole but in each of the 11 infringement disputes this case comprises. No other district has such a strong interest in this case. *Third*, a substantial

measure of Defendants' infringement and related activities is occurring within and just outside the borders of this district.

### 2. The Northern District of California has far less of a local interest.

Again attempting to manufacture centrality in San Jose, Defendants claim that the "work and reputation" of thousands of Facebook and Apple employees, as well as California employees of Disney, ABC, and Research in Motion, is at stake in this case. Defs. at 14. Again, Defendants have not identified a single relevant witness of Disney, ABC, or Research in Motion in California, or any one of the "several thousand" employees of Facebook and Apple whose work is purportedly at issue. Moreover, this case is about intellectual property rights – not anyone's reputation. This isn't a case where SimpleAir is claiming that Defendants copied its technology. In fact, SimpleAir has not alleged willfulness with respect to any of the Defendants much less Apple and Facebook. To be certain, the Northern District of California does have a local interest in this case as regards Defendants Apple and Facebook. But that interest does not apply to the remaining parties and is not nearly as strong as the interest of this district.

### C. Factors 3 and 4: "familiarity of the forum with the law that will govern the case; and the avoidance of unnecessary problems of conflict of laws"

Defendants do not argue, much less show, that the Northern District of California has greater familiarity with the patent law than this District or that the former is better able to avoid conflicts of law. Accordingly, these factors also weigh against transfer.

### V. Conclusion.

Defendants have failed to establish their thesis that the Northern District of California is at the center of this dispute. That thesis is false. No single factor shows Northern California to be a clearly more convenient venue than this district and the evidence on the whole establishes that this district is in fact clearly more convenient than any other. Transfer is wholly inappropriate.

Dated: April 21, 2010                                Respectfully submitted,

                                                     By: /s/ *Jeff Eichmann*

                                                Gregory S. Dovel
                                                CA State Bar No. 135387
                                                John Jeffrey Eichmann
                                                CA State Bar No. 227472
                                                Dovel & Luner, LLP
                                                201 Santa Monica Blvd.,Suite 600
                                                Santa Monica, CA 90401
                                                Telephone:  310-656-7066
                                                Facsimile:  310-657-7069
                                                Email: greg@dovellaw.com
                                                Email:  jeff@dovellaw.com

                                                S. Calvin Capshaw
                                                State Bar No. 03783900
                                                Elizabeth L. DeRieux
                                                State Bar No. 05770585
                                                Capshaw DeRieux LLP
                                                1127 Judson Road, Suite 220
                                                Longview, TX 75601
                                                Telephone:  (903) 236-9800
                                                Facsimile:  (903) 236-8787
                                                Email:  ccapshaw@mailbmc.com
                                                Email:  ederieux@mailbmc.com


                                                ATTORNEYS FOR PLAINTIFF,
                                                SIMPLEAIR, INC.

### Certificate of Service

      The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 21th day of April, 2010.

                                                /s/ *Jeff Eichmann*
                                                John Jeffrey Eichmann