UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SIMPLEAIR, INC., | § | |
| | § | |
| vs. | § | CASE NO. 2:09-CV-289-CE |
| | § | |
| APPLE INC., et al. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

Pending before the court is defendants Apple Inc. ("Apple"), Disney Online, ESPN Enterprises, Inc. ("ESPN Enterprises"), American Broadcasting Companies, Inc. ("ABC") and Handmark, Inc.'s ("Handmark") (collectively, "Defendants")[1] motion to transfer this case to the United States District Court for the Northern District of California (Dkt. No. 98). Defendants contend that the Northern District of California is a more convenient forum than the Eastern District of Texas and seek to transfer venue pursuant to 28 U.S.C. § 1404(a). The court, having considered the venue motion and the arguments of counsel, DENIES Defendants' motion to transfer venue because the balance of the "private" and "public" *forum non conveniens* factors demonstrates that the transferee venue is not "clearly more convenient" than the venue chosen by Plaintiffs. *See In re Nintendo Co.*, 589 F.3d 1194, 1197-98 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

---

[1] Although defendants AWS Convergence Technologies, Inc. ("AWS") and Facebook, Inc. ("Facebook") originally joined in Defendants' motion, these parties have since been terminated. Furthermore, although defendants Research In Motion Corporation ("RIM Corp.") and Research In Motion Limited ("RIM Ltd.") (collectively "RIM") do not join in this motion, they do not oppose it.

## II. Factual and Procedural Background

SimpleAir, Inc. ("SimpleAir" or "Plaintiff") filed its complaint on September 23, 2009, alleging that defendants Apple, Facebook and RIM infringe United States Patent Nos. 6,021,433; 7,035,914; 6,167,426; and 6,735,614 (collectively, the "patents-in-suit"). The complaint further alleges that defendants Disney Online, ESPN Enterprises, ABC, and Handmark infringe the '433 and '914 patents. The complaint alleges that defendants' products or services relating to the generation, processing, and/or delivery of content, notifications, and updates to or for mobile computing devices infringe the patents-in-suit. On March 31, 2010, Defendants filed this motion to transfer venue, arguing that the Northern District of California was a clearly more convenient forum in which to litigate this lawsuit than the Eastern District of Texas.

## III. Legal Standards

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Nintendo*, 589 F.3d at 1197; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Id.* In making the convenience determination, the Fifth Circuit considers several "private" and "public"

interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

**IV.    Analysis**

The court will first address Defendants' contention that, despite Plaintiff being incorporated in Texas and having a business address in the Eastern District of Texas (specifically, Plano, Texas), Plaintiff has no real connection to the Eastern District of Texas. Plaintiff does not dispute that just one month before filing this lawsuit it incorporated itself in Texas, and just one week before filing it cancelled its California incorporation. Furthermore, Plaintiff does not dispute that all of its employees reside in California. Rather, Plaintiff explains that it relocated to Texas to "facilitate access to this [c]ourt." Plaintiff has previously filed two lawsuits in this district and has retained local counsel and expert witnesses in this district. Plaintiff contends that although its CEO resides in Southern California, he also conducts business in the Plano, Texas office, including meetings with Plaintiff's patent counsel, and other work

3

with Plaintiff's experts and litigation counsel. As such, Plaintiff argues that it relocated to Plano, Texas for business reasons – not to manipulate venue.

In *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1380 (Fed. Cir. 2010), the Federal Circuit explained that a plaintiff's decision to claim its principal place of business in Texas does require close scrutiny when that decision is made in anticipation of litigation. *Id.* In *Zimmer*, the plaintiff had transported copies of its patent prosecution files from Michigan to its Texas office space. *Id.* The plaintiff's offices in Texas, however, staffed no employees. *Id.* Under these circumstances, the Federal Circuit concluded that the plaintiff's presence in Texas was "recent, ephemeral, and an artifact of litigation" – i.e., plaintiff's presence appeared to exist for no other purpose than to manipulate venue. *Id.*; *see also In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011). The Federal Circuit expanded on this reasoning in *Microsoft Corp.* In that case, the Federal Circuit concluded that the plaintiff's extra step of incorporating under the laws of Texas sixteen days before filing suit was "no more meaningful, and no less in anticipation of litigation" than the steps taken by the plaintiff in *Zimmer*. *Microsoft Corp.*, 630 F.3d at 1365.

Here, Plaintiff has admitted that its decision to incorporate in Texas was made in anticipation of litigation. Furthermore, Plaintiff has admitted that it has no employees that reside in Texas and that the one employee that conducts business out of its Plano, Texas office does only litigation related business. As such, the court concludes that Plaintiff's presence in the Eastern District of Texas is entitled to minimal weight in the court's analysis of the § 1404(a) *forum non conveniens* factors.

### A. Proper Venue

As a threshold matter, the court must determine if venue is proper in the Northern District of California. Transfer of a suit involving multiple defendants is ordinarily proper "'only if all of

them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'" *Id.* at 549 (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir.1984)). Plaintiff does not contend that any of the defendants in this litigation could not have been sued originally in the Northern District of California. Therefore, venue would have been proper in the Northern District of California as to all defendants.

### B. Private Interest Factors

#### i. *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the first "private" interest factor to consider. Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be an important private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit counsels that an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location.") (citation omitted).

In this case, the allegedly infringing acts of defendant Apple took place in the Northern District of California – i.e., the development of the accused products. Furthermore, it is undisputed that defendant Disney Online's principal place of business is in the Central District of California. As such, Defendants argue that the sources of proof for at least one defendant are located in the Northern District of California and that the sources of proof for another defendant are located significantly closer to the Northern District of California than the Eastern District of Texas. In contrast, only defendant RIM Corp. has its principal place of business in Texas, and it

5

is located in the Northern District of Texas. Therefore, Defendants argue that no relevant sources of proof are located in the Eastern District of Texas, and that what little proof is located in Texas is greatly overshadowed by the sources of proof housed in the Northern District of California.

In response, Plaintiff argues that Defendants' narrow focus on the ease of access to the sources of proof of only a few of the defendants fails to account for the relative ease of access to relevant sources of proof residing with the other parties. Plaintiff argues that the relevant evidence in this case is scattered throughout the country, and thus the Eastern District of Texas, as compared to the Northern District of California, is more convenient for all parties involved. Plaintiff also contends that there are substantial sources of proof relating to all of the issues in this case located in Texas and specifically in the Eastern District of Texas.

In *Nintendo* and *Genetech*, the Federal Circuit rejected the centralized location argument in situations where *none* of the physical evidence or witnesses pertinent to the case were located in Texas. *Nintendo*, 589 F.3d at 1199 (holding it improper to consider the centralized location of the transferor court when "none of the parties were incorporated in Texas or had offices in Texas, no witnesses resided in Texas, and no evidence was located in Texas."); *see also In re Genetech, Inc.*, 566 F.3d at 1344 (stating that "[i]n the present case, it is undisputed that no identified witness is a resident of Texas" and thus concluding that "the district court improperly used its central location as a consideration."). This case, however, is distinguishable because defendant RIM Corp. is headquartered in Texas and will almost certainly have relevant documents and witnesses located at its headquarters. Furthermore, although the court will disregard the presence of Plaintiff's litigation-related documents in this district, Plaintiff has also identified a significant amount of potentially relevant third-party documents that are maintained

within Texas. Under the present facts, it is necessary for the court to consider its location in its analysis of the § 1404(a) factors. *See United States v. Binder*, 794 F.2d 1195, 1200 (7th Cir. 1986).

Given that a considerable amount of the evidence relevant to this case is located in Texas and that the rest of the evidence is scattered throughout the country, a venue in Texas rather than a far western state like California is more convenient for all parties involved. *See Binder*, 794 F.2d at 1200. For example, defendant RIM Corp.'s documents will have to be transported an extra 1,535 miles[2] if this case were transferred to the Northern District of California. Defendant ESPN Enterprises, which maintains its principal place of business in Bristol, Connecticut, will have to transport its documents an extra 1,457 miles if this case is transferred. Defendant ABC, which maintains its principal place of business in New York, New, York, will have to transport its documents an extra 1,479 miles if this case is transferred. And defendant Handmark, which is headquartered in Kansas City, Missouri, will have to transport its documents and extra 410 miles if this case is transferred. Although defendants Apple and Disney Online will experience less inconvenience if this case is transferred to the Northern District of California, their convenience cannot offset the inconvenience that such a transfer would cause four of the other defendants in this case. As such, the court concludes that this factor weighs against transfer.

      *ii.    Availability of Compulsory Process*

The next "private" interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. Rule 45 of the Federal Rules of Civil Procedure limits the court's subpoena power by protecting non-

---

[2] The court chose Palo Alto, California, which is located in the Northern District of California, as its California reference point for all calculations herein.

party witnesses who work or reside more than 100 miles from the courthouse. *Id.* The Federal Circuit has made it clear that "absolute" subpoena power does not require that all relevant non-party witnesses reside within the subpoena power of the court. *In re Hoffmann-La Roche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009). Rather, "absolute" subpoena power requires merely that the court have the power to subpoena non-party witnesses for both depositions and trials. *Id.* at 1338.

Defendants specifically identify numerous non-party witnesses over which the Northern District of California has absolute subpoena power, including five witnesses that could testify regarding the invalidity of the of the patents-in-suit or the marketing of the accused products, and an additional twenty-nine inventors and assignees of potentially anticipating prior art. For example, Defendants identify a former employee of defendant Apple with knowledge of the accused products that resides in the Northern District of California. Mr. Robert Borchers, the former Senior Director of Worldwide Product Marketing for defendant Apple has had responsibility related to the marketing strategy of the Apple accused products.

By comparison, Plaintiff has identified roughly six witnesses that they allege would be subject to this court's *absolute* subpoena power – i.e., they work or reside within 100 miles of this courthouse. Plaintiff, however, fails to state whether these witnesses are party or non-party witnesses and does not explain to the court why the testimony of these individuals will be relevant to the issues in this case. Even if Plaintiff had explained the relevance of these individuals' testimony, Plaintiff has identified only six witnesses that are subject to the absolute subpoena power of this court, as opposed to the thirty-four non-party witnesses that are subject to the subpoena power of the Northern District of California. As such, this factor weighs in favor of transfer.

>*iii.*     *Cost of Attendance for Willing Witnesses*

Next, the court must weigh the cost for witnesses to travel and attend trial in the Eastern District of Texas versus the Northern District of California. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 556 F.3d at 1342. The Fifth Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled. Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*Volkswagen I*, 371 F.3d at 205. Although the court must consider the convenience of both the party and non-party witnesses, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mohamed v. Mazda Motor Corp.*, 90 F.Supp.2d 757, 775 (E.D. Tex. 2000); *see also id.* at 204 (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009).

With regard to the party witnesses, three of the parties' expected witnesses in this action are located in California – i.e., plaintiff SimpleAir and defendants Apple and Disney Online. As discussed above, defendant Apple is headquartered in the Northern District of California and plans to call its party witnesses from that district. For Apple's party witnesses, it is undisputed that any courthouse in the Northern District of California is approximately 2,000 miles closer than the Marshall courthouse of the Eastern District of Texas. Furthermore, Disney Online is headquartered in Burbank, California. Therefore, it is reasonable to conclude that a significant number of its respective party witnesses will be located in the Central District of California. It is undisputed that Burbank, California is approximately 1,200 miles closer to any Northern District

of California courthouse than to the this courthouse. Finally, Plaintiff does not dispute that all of its employees – including two co-inventors of all four patents-in-suit – reside in California. It cannot be disputed that travel to the Northern District of California would be less burdensome on these employees than would travel to the Eastern District of Texas.

With regard to non-party witnesses, Defendants have specifically identified at least thirty-four non-party witnesses who reside in or near the Northern District of California. Defendants contend that these non-party witnesses will provide relevant testimony regarding the validity of the patents-in-suit and the marketing of the accused products. For these witnesses, the Eastern District of Texas is approximately 2,000 miles further away than any Northern District of California courthouse. In response, Plaintiff identifies approximately sixty potentially relevant witnesses alleged to reside throughout the state of Texas, and sixteen witnesses alleged to reside in the Eastern District of Texas.

This factor is similar to the ease of access to sources of proof factor discussed above. Given that the party witnesses in this case are scattered throughout the country, the court concludes that, on balance, it would be more convenient for party witnesses to attend trial in this court as opposed to the Northern District of California. As illustrated above, it is reasonable to conclude that the numerous party witnesses of defendants RIM Corp., ESPN, ABC, and Handmark will experience less inconvenience if this case is maintained in the Eastern District of Texas. Furthermore, Plaintiff has identified numerous non-party witnesses alleged to reside in Texas that will most likely provide relevant testimony in this case. The inconvenience placed on these non-party witnesses will be significantly greater if this case is transferred to the Northern District of California. As such, the court concludes that this factor weighs against transfer.

### iv.     *Other Practical Problems*

Practical problems include issues of judicial economy. *Volkswagen III*, 566 F.3d at 1351. The Fifth Circuit as well as other circuits have emphasized that a party should not delay filing of a motion to transfer. *In re Wyeth*, 406 Fed. Appx. 475, 477 (Fed. Cir. 2010); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *McGraw–Edison Co. v. Van Pelt*, 350 F.2d 361, 364 (8th Cir. 1965). In *Peteet*, the Fifth Circuit stated that "[p]arties seeking a change of venue should act with 'reasonable promptness.'" *Peteet*, 868 F.2d at 1436. "Without reasonable promptness on the part of the movant, a case proceeds, requiring the court to expend time and effort that might become wasted upon transfer." *Wyeth*, 406 Fed. Appx. at 477.

Plaintiff contends that Defendants' delay in filing its motion to transfer venue causes this factor to weigh against transfer. Defendants, however, filed their motion to transfer venue approximately two months after the final defendant filed its answer to Plaintiff's complaint and only one day after the court first noticed a scheduling conference in this case. Furthermore, Defendants did not ask this court to rule on any substantive matters before filing its motion to transfer venue. As such, the court concludes that Defendants did not unduly delay in filing their motion to transfer venue.

Plaintiff also contends that this court's familiarity with the patents-in-suit weighs against transfer to the Northern District of California. This court has handled previous cases involving three of the four patents-in-suit. *See SimpleAir Holdings, Inc. v. m-Qube*, Inc., No. 2:06-cv-00449-CE (E.D. Tex. filed Oct. 27, 2006); *SimpleAir Holdings, Inc. v. clearTXT, Inc.*, No. 2:08-cv-00290-TJW (E.D. Tex. filed Jul. 28, 2008). Both of these cases, however, settled before a claim construction hearing took place or any substantive rulings related to the patents-in-suit were made. As such, the court concludes that its familiarity, if any, with the patents-in-suit does

not weigh in favor of maintaining the lawsuit in this court. *See In re Verizon Business Network Services Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011).

In conclusion, the court concludes that this factor is neutral.

### B. Public Interest Factors

#### i. Court Congestion

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. *Genentech*, 566 F.3d at 1347. This factor is the "most speculative," however, and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Id.* Plaintiff contends that transfer of the case to the Northern District of California would increase the time to trial, and Defendants do not dispute this. In all, however, given the speculative nature of this factor, the court finds it to be neutral.

#### ii. Local Interest

The court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Communities have the right to adjudicate disputes involving "several individuals" who have had their "work and reputation" called into question "and who presumably conduct business in that community." *Hoffman-La Roche*, 587 F.3d at 1336. Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

Defendants argue that the Northern District of California has a strong local interest in resolving this case because defendant Apple is headquartered there and developed its allegedly infringing products at its headquarters. As such, Defendants argue that the citizens of the Northern District of California have an interest in adjudicating a dispute which calls into question the work and reputation of individuals working in their local community. In contrast, Defendants argue that there is no relevant connection between this case and the Eastern District of Texas because none of the parties maintain any operations, research and development, or manufacturing facilities in the Eastern District of Texas, and thus, none of the design, development, or manufacturing of the accused services or products has occurred in the Eastern District of Texas. Plaintiff, however, argues that this court does have a local interest in the outcome of this case because a local company played a role in the initial commercialization of the technology of the patents-in-suit.

Although there is some local interest in the Eastern District of Texas, the court agrees with Defendants that the Northern District of California has a stronger local interest in resolving this litigation. At least one of the parties to this litigation is headquartered in the Northern District of California and developed its allegedly infringing products there. None of the parties is headquartered in the Eastern District of Texas, and none developed any of the accused products here. Accordingly, this factor tips in favor of transfer.

      *iii.*     *Familiarity with the Governing Law*

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Both the Northern District of California and the Eastern District of Texas are familiar with patent law, and thus this factor is neutral. *See In re TS Tech*, 551 F.3d at 1320-21.

      *iv.*    *Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

## V. Conclusion

Considering all of the "private" and "public" interest factors, Defendants have not shown that the Northern District of California is "clearly more convenient" than the Eastern District of Texas. Although two of the § 1404(a) factors weigh in favor of transfer, two factors also weigh against transfer and the rest are neutral. As such, Defendants' motion to transfer venue is DENIED.

SIGNED this 15th day of June, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE

14